MAXWELL POLANSKY v. MILLERS' MUTUAL FIRE INSURANCE ASSOCIATION OF ILLINOIS.

(Filed 21 October, 1953.)

**1. Trial § 22a—**

Upon motion to nonsuit, plaintiff's evidence is to be taken as true, and plaintiff given every reasonable inference in his favor therefrom.

**2. Trial § 22b—**

Upon motion to nonsuit, defendant's evidence is not to be considered unless favorable to plaintiff, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by plaintiff.

**3. Insurance § 50—**

The policy in suit covered direct and accidental damage to insured's automobile caused by explosion, with later provision excluding liability for damage caused by mechanical or electrical breakdown or failure unless the result of other loss covered by the policy. *Held:* The burden of proof was upon insurer to show that the damages claimed fell within the exclusion and an instruction to this effect is not error.

**4. Insurance § 45¾—Evidence held for jury on question of whether damage to car resulted from accidental explosion within coverage of policy.**

The policy in suit covered direct and accidental damage to insured's car caused by explosion, with an exclusion of liability if the damage were due to mechanical or electrical breakdown or failure. Plaintiff's evidence was to the effect that after the car had been serviced with gas and oil, he stepped on the starter and there was an explosion with smoke and fire, and that thereafter a hole was found in the motor near one of the cylinders. Insurer offered evidence to the effect that the hole was caused by the connecting rod of the cylinder breaking loose and being driven through the block by the other cylinders. *Held:* The evidence was properly submitted to the jury upon the question of whether the damage was the "accidental" result of an "explosion."

**5. Insurance § 50: Trial § 31g—**

In this action to recover under a policy of insurance for damage to a car accidentally resulting from explosion, the court's instruction to the effect that the dealer who had sold the car to plaintiff insured and the

dealer's mechanic who had worked on the car, were interested witnesses and that their testimony should be scrutinized by the jury, *is held* for prejudicial error, there being no evidence in the record that the witnesses were related to plaintiff or were in any legal respect interested.

APPEAL by the defendant from *Sink, J.,* July Civil Term, 1953. Buncombe.

This is a civil action wherein plaintiff seeks to recover for damage to his automobile allegedly caused by fire or explosion under a contract of insurance issued by the defendant.

On 17 November 1949, the plaintiff, a citizen and resident of this State, was the owner of a 1947 Model Packard Sedan. The defendant, in consideration of the sum of $122.00, paid to it as a premium by the plaintiff, issued to the plaintiff on 5 May 1949 its policy of insurance No. 9 A-91126, by which it duly insured plaintiff among other things, against loss of or damage to his Packard automobile as follows:

"I. COVERAGE A—Comprehensive loss of or Damage to Automobile, Except by Collision or Upset. To pay for any direct and accidental loss of or damage to the automobile, . . . except loss caused by . . . fire . . . explosion . . . shall not be deemed loss caused by collision or upset."

"COVERAGE C—Fire, Lightning and Transportation. To pay for direct and accidental loss of or damage to the automobile . . . caused (a) by fire or lightning . . ."

"COVERAGE E—Windstorm, Earthquake, Explosion, Hail or Water. To pay for direct and accidental loss of or damage to the automobile . . . caused by . . . explosion . . ."

"COVERAGE F—Combined Additional Coverage. To pay for direct and accidental loss of or damage to the automobile . . . caused by . . . explosion . . ."

This insurance policy was in full force and effect at the time of the alleged fire and explosion.

The defendant alleges and contends that if the plaintiff sustained any damage to his automobile as a result of fire or explosion, which is denied, then said damage resulted from wear and tear or mechanical or electrical breakdown or failure, and is excluded under the following provision of the insurance policy, reading as follows:

## "EXCLUSIONS

"This policy does not apply: (d) under any of the coverages, to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy."

On 17 November 1949, a very cold day, the plaintiff drove his car to a filling station in Asheville, and had gas put in his car. The attendant

checked the oil, and put a quart of oil in the engine. After the car was serviced, plaintiff stepped on the starter two or three times, and saw fire coming from under the hood. Very quickly there was an explosion and fire. The explosion caused a terrific noise. It seemed to be burning underneath the hood—there was a red glow. After the explosion there was oil all over the driveway under the car—2 or 3 quarts. Plaintiff noticed some of the wires which seemed to be burned or scorched. The following morning the plaintiff looked at the engine of his car. There was a hole in the engine by cylinder #2 on the left side.

C. C. Hudgins owned the filling station where Hugh M. Carson worked. He checked the oil and added a quart. After he lowered the hood plaintiff stepped on the starter; a terrific explosion occurred and fire came from underneath, fire and smoke. I stepped inside the station to get the fire extinguisher. When I returned nothing was burning. Nothing had been done as far as I know to put any fire out. 2 or 3 quarts of oil were underneath the car on the pavement. The oil was not burning. When he checked the oil it was about one quart low.

Hugh M. Carson put the gas in the car. At the time of the explosion he was cleaning the rear glass of the car. Immediately after the explosion he saw light underneath the car, and noticed quite a bit of smoke. The glare was like you flash a light on and cut it off quickly. The next morning he looked at the motor, and saw a hole in the motor between the place where the oil is put in and the #2 cylinder. He testified on cross-examination the spark ignites the gas, there is an explosion which drives the motor. I did not see any fire. "There was a noise and a flash, and that was all there was to it."

The plaintiff introduced the insurance policy in evidence. The defendant denied liability.

The plaintiff testified in rebuttal that on 15 November 1949, he took his automobile to the Packard Company in Asheville to have the timing checked. It "discharged it (the automobile) as nothing wrong with it."

This is a summation of the defendant's evidence. C. Fred Brown, who was held by the court to be an expert in the field of automobile motors, sold this car to plaintiff in 1947. According to the repair bill, it had been driven 15,897 miles. A Packard Motor will last varying times—some have been operated 315,000 miles; however, there would be breakdown of the engines and replacements. He saw this car 18 November 1949, and saw a hole in the cylinder wall. He recalls no wiring being burned. Plaintiff's car had 8 cylinders. It operated by gas going through the carburetor, being discharged to the chamber where the cylinders operate and as the gas is ignited by the spark it forces the pistons down, turns the crankshaft directly connected with the universal and driveshafts, and into the rear axle of the car, which causes the car to move. Cylinder oil

in the engine lubricates the bearings, and the working parts of the engine. #2 cylinder has a connecting rod coming from the crankshaft which is attached to the piston, which moves up and down. The connecting rod had broken, coming through the cylinder wall, which caused the hole in the wall or motor block. The connecting rod was disconnected from the bearing, which, in his opinion, caused the hole. There are many reasons why a connecting rod could get loose.

Jennings G. Featherstone, held by the court to be an expert witness on Packard Motors, gave substantially the same testimony as Brown, with these additions. In his opinion, the hole in the block of the motor was caused from oil not getting to the journal, and the bearing became heated and jerked loose, and the other 7 cylinders drove the broken connecting rod through the block. The wiring of the motor was all right. He saw no evidence of burning. He saw this car about a week before 18 November, and the car was not in good running condition.

Another witness for the defendant saw the "mangled" rod, but saw no evidence of fire.

Upon issues submitted the jury found that the automobile of plaintiff was damaged by fire or explosion as alleged; that the fire or explosion was not a result of wear and tear, or mechanical or electrical breakdown or failure as alleged by the defendant; and awarded damages of $400.00 plus interest.

From judgment signed in accord with the verdict, the defendant appeals.

*Uzzell & DuMont for plaintiff, appellee.*
*Gudger, Elmore & Martin for defendant, appellant.*

PARKER, J. The defendant assigns as Errors Nos. 4 and 5 the trial court's denying its motion for judgment of nonsuit made at the close of the plaintiff's evidence, and renewed at the close of all the evidence. G.S. 1-183.

In passing upon such a motion it is well settled law that the plaintiff's evidence is taken as true, and given every reasonable inference in favor of the plaintiff; the defendant's evidence, unless favorable to the plaintiff, is not considered, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by the plaintiff. *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543; *Whitley v. Jones, ante,* 332, 78 S.E. 2d 147.

The plaintiff's evidence, taken as true, establishes fire, smoke and an explosion causing damage to the automobile. The defendant's evidence tended to show that no fire or explosion occurred, and that the damage to the car resulted from mechanical breakdown or failure.

The defendant contends that to avoid a nonsuit the plaintiff must offer evidence that his loss comes within the provisions of the insurance policy *and is not excluded by any of the exceptions in the policy.* The defendant alleges in its answer as an affirmative defense that plaintiff's loss was caused by wear and tear or mechanical or electrical breakdown or failure, and is excluded under the provisions of the insurance policy.

It is generally held that the burden is on the insurer to show that damages claimed fall within an exception of loss by explosion. 29 Am. Jur., Insurance, p. 1086; *German American Ins. Co. v. Hyman,* 42 Colo. 156, 94 P. 27, 16 L.R.A. (N.S.) 77.

In *MacClure v. Casualty Co.,* 229 N.C. 305, 49 S.E. 2d 742, the lower court nonsuited the plaintiff based upon an affirmative defense set up by the defendant. In reversing the lower court, we said "the general rule is that the party who seeks to avoid liability by interposing an affirmative plea assumes the burden of proving his allegation by competent evidence before the jury" (citing authorities). To the same effect *Williams v. Ins. Co.,* 212 N.C. 516, 193 S.E. 728, and *Wilson v. Casualty Co.,* 210 N.C. 585, 188 S.E. 102. See also *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16.

The defendant relies upon *General Exchange Ins. Corp. v. Bolles* (Court of Civil Appeals of Texas), 143 S.W. 2d 635, and other Texas cases. Whatever may be the law in Texas, our cases hold otherwise. It also relies on *Trust Co. v. Casualty Co.,* 231 N.C. 510, 57 S.E. 2d 809. On the facts that case is not in point.

The defendant further contends on his motion for nonsuit "standing alone, the plaintiff's evidence creates a mystery. No cause for the light, smoke and loud noise is given or can be inferred from plaintiff's testimony. The evidence of the defendant explains and clarifies the evidence of the plaintiff to this effect." The insurance policy insures the plaintiff against direct and accidental loss to his automobile caused by fire or explosion. In making this contention the defendant does not heed the definition of the word "accidental." In *Kirkley v. Ins. Co.,* 232 N.C. 292, 59 S.E. 2d 629, there was an insurance policy containing the exact words of the policy in this case as to comprehensive loss or damage except by collision or upset, as set forth in "1 Coverage A." In that case this Court said "accidental" is defined in Black's Law Dictionary, 3rd, Ed., p. 23, as "an unforeseen event, occurring without the will or design of the person whose mere act caused it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty."

The trial court would not have been justified in nonsuiting the plaintiff upon the evidence of the defendant who has made an affirmative defense with respect to which the burden of proof rests upon him. The

court was correct in submitting the case to the jury, and assignments of errors Nos. 4 and 5 are without merit.

The only other assignments of errors discussed in defendant's brief are as to the court's charge. Assignments of errors Nos. 13 and 15 are to the court's placing the burden of proof of the second issue reading "If so, was said fire or explosion a result of wear and tear or mechanical or electrical breakdown or failure, as alleged in the defendant's further answer and defense?" on the defendant. For the reasons stated above those assignments of errors are not tenable.

The defendant's assignment of error No. 18 is to this part of the charge "Mr. and Mrs. Polansky have testified in behalf of the plaintiff; Brown Motor Company, the insurer's adjuster and one of the employees of Brown Motor Company, have testified on behalf of the defendant. These witnesses, the court charges you, are interested in the outcome of your verdict, and because of the interest that they have in the outcome of your verdict the court charges you to scrutinize their testimony and that of each of them. The law says that the court shall do so." The defendant had three witnesses: C. Fred Brown, Jennings G. Featherstone and Merlin Adcock. C. Fred Brown sold this car to plaintiff in 1947. He has sold Packard cars for 20 years. Featherstone, a mechanic, works for the Brown Motor Company. Adcock was an insurance adjuster. Conceding, but not deciding, that Adcock was interested in the outcome of the verdict, the record is bare of any evidence that Brown Motor Company, or Brown or Featherstone was related to the plaintiff or in any legal respect interested. The statement that Brown and Featherstone were interested in the verdict likely proved hurtful to the defendant's defense, though not so intended by the able and experienced trial judge. It is one of the casualties of the circuit which happen at times to all trial judges.

Under our decision in *S. v. Dooley,* 232 N.C. 311, 59 S.E. 2d 808, and under the facts, we think that this assignment of error is good, and there should be another hearing. It is so ordered.

New trial.